Good morning. May it please the court. I'm Phil Hantel, counsel for Mr. Erickson, who's the petitioner in this matter. I don't know that I have much to add other than what I tried to present in the papers. I hope it was clear enough. I think that our position is that chronic should have applied in this case and that the lower courts were acted contrary to established law by not applying chronic. I think that chronic applies in this case where it doesn't in other cases just because of the lack of cross-examination throughout the record. Excuse me. Excuse me. Could we please close the door? As I was saying, or hopefully I was saying, I think that chronic applies in this case because there was very little cross-examination throughout this case. But more importantly, because during closing argument, counsel did more than concede a count or two. He went on to vilify his client, as Magistrate Mathis noted. He went on to bolster the State's witnesses. Wasn't there rather good reason for proceeding in that way? I don't believe that there was, and I think that Magistrate Mathis pointed that out, saying that no one has asked how this could be a good tactical decision to go so far as to bolster these witnesses, especially when the witness that is bolstering is the best friend of the witness that he later tries to attack. I think that everything is so commingled when you have a case that involves. Well, maybe I should go back a step. Okay. Was there not a reasonable tactical approach? I don't say it was the only approach, but a reasonable tactical approach for counsel in representing a client who had four counts against him, two of them very, very severe, and two of less severity, in effect to and realizing that the evidence was very, very strong with respect to all four counts. Would it not be, could it not have been a sensible way of proceeding to decide that the point of attack should be with respect to the two really serious counts and that the jury would be less interested in that kind of defense if counsel also insisted on undertaking to attack the credibility of the principal witnesses on the first two accounts, which were, relatively speaking, not as serious? Well, I think the case law is clear that that has been upheld as being a reasonable tactical decision. I think where this case differs from that and what I think that the, my issue as counsel with it is, is how far he went with that in the sense that he did more than just, you know, when he said she's, you know, You're concerned about the vouching for Sarah's testimony? I am. I find that problematic. And I think that, you know, any criminal defense attorney who has done indigent defense work or public defender work has faced cases where the evidence is overwhelming. And what do you say to a jury? But I don't think that that rises to the level of what he did in saying things that the prosecution, quite frankly, couldn't say about that witness and her credibility. You know, I know that I think this Court has held and I know other courts have held, sometimes it's just better not to say anything at all rather than helping the other side out by bolstering this witness. In addition to that. Suppose counsel simply said with respect to the charges about Sarah, I'm not going to undertake to persuade you that Sarah was testifying falsely. And didn't go on to say she was 98.5 percent truthful. Would such a recital be ineffective assistance of counsel? In this case, with nothing else changing, I think it would. And the reason that I say that is because of the other things that are said about the defendant, the personal attacks that defense counsel made on the defendant. You know, saying that, you know, his conduct was despicable and the fact that he'd, you know, done these things to his daughter and pimped them out or whatever the exact quotes were, which I know both sides have reiterated ad nauseum. I think that that is what the broad scope of what he did, in addition to bolstering that one witness, but then going on the offensive against his own client who was absent and hadn't given him instructions to, you know, to make those concessions. It was not counsel's fault that his client was absent. So you may properly tell me that that doesn't bear on the issues at all. Well, I mean, clearly it has, and it was the basis of a lot of the evidentiary hearing in the lower court is why he was absent and what communications those two had. But, I mean, at the end of the day, it comes down, I think, to the closing argument in the context of the entire trial. Well, the real question, I think, is whether it's chronic or just strict. And making an unwise judgment as to an argument, I mean, let's assume it was a terrible decision, and it was clearly strict from there. What authority is there that this is chronic error? Well, I think it has to be, because of the broad scope. And I was trying to, I guess, make that point in the beginning when I talk about the lack of cross-examination throughout the trial, and then you have this closing argument at the end. In a context of that, I think that that gets us to chronic, where I can't say, Judge, the lawyer should have investigated this witness. He didn't. If he had, we have this evidentiary hearing that shows what the witness would have said, and he would have undermined it X, Y, and Z. I can't tell you that here, because none of that was done. So for me to point to a specific prejudice in Strickland, I can't do it, because as to be specific. The witness has got to be chronic. Chronic, yes. But the question is, and chronic seems to be a shrinking concept these days. Am I correct that he was not at trial? The defendant? Yes. And that the little, the witnesses were, the girls were, or what, who were the witnesses? There were nine witnesses. There were two victims who were named in the indictment, and then there were two witnesses who were my client's family members that also alleged similar acts. And other than that, they had law enforcement, and then they had a doctor that came in and talked about his propensity to molest children. So there were a lot of sympathetic witnesses there. I believe, having not seen them. But, yes. Okay.  All right. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Julie Doan representing Respondent Eppley, Deputy Walker in this matter. It is obviously the State's position that chronic does not apply in this case, and that Strickland applies. And applying Strickland to this case, there was neither deficient performance nor prejudice shown in this case. The appellant just conceded that there was no prejudice. He cannot point to any specific prejudice, which is his burden under Strickland to point to prejudice. Why isn't chronic applicable here?  Chronic is not applicable because there was not a complete breakdown of the adversarial process. All the cases that discuss chronic versus Strickland talk about how there has to be an entire or complete breakdown of the adversarial process. Here, although he did concede guilt, essentially, regarding the victim with the lesser charges, he did not do that with the victim with more serious charges, and, in fact, went the other way after he got done talking about the victim with the lesser charges. He says, however, the other victim is a different story, and then went through and specifically attacked all the inconsistencies and ---- So what we have is sort of half chronic. Is that right? Well, and I wouldn't even ---- I'll throw away the two counts, and I'll keep ---- I want you to help me on the other counts he was saying to the jury. Well, and I wouldn't even call that half chronic, because at that point it was a tactical decision in order to preserve his credibility with the jury. And he testified at the evidentiary hearing that a lot of his closing was dependent on his ---- how he appeared, how the jury appeared to be taking the witness's testimony. He said when the victim of the lesser charges testified, the jury very, very, very much liked her. And then when the other two victims, the 404B victims testified, at one point, the two of the jurors were crying when they testified. Yeah. So what does the record say about the reason that the defendant wasn't there? That was brought out at the evidentiary hearing. Defendant said one thing, that he told his counsel he needed to rest up for a rotator cuff surgery, so he was going to go out on the lake the next week. And according to him, his counsel assured him he'd get a continuance. At the evidentiary hearing, counsel said that did not happen. He never learned that his client was going to be on Lake Mead and never told him that he was going to get a continuance. And the magistrate judge, despite her initial ruling saying Cronic applied, said that the defendant intentionally failed to appear. So she conceded that, that in her ruling. So the other reason why Cronic wouldn't apply because it is a tactical decision is because of the vast disparity in the penalties between the counts. The two lesser counts against that victim, he was actually eligible for probation on those two counts. And he got a year and nine months on each of those counts, whereas the other more serious counts, because of the ages of the victim, he faced up to 15 years flat time on each count to run consecutive. So that was a tactical decision he had to make, especially in view of the fact that his client didn't show up. I mean, in fact, it is our view that the client abandoned his counsel and not the other way around. He did the best he could with what he had to work with, and the magistrate, you know, conceded this in her ruling. And as Appellant already said, he cannot point to specific prejudice in this case, but despite that, there's overwhelming evidence against both victims in the case, so we would argue that there is no prejudice. So even under Strickland, it would fail. Are there any further questions? Thank you. Thank you. Just briefly, I guess right before I sat down, you asked me about the shrinking chronic area of law, and I have to agree with you, it is shrinking. And the lack of cases that I've been able to find addressing chronic, I think, shows that. But I think that in a case like this, it's almost what chronic was decided to provide for when you have a case like this where there isn't a specific thing that you can point to, but when you look throughout the record, counsel's performance was deficient and it prejudiced, and so the prejudice doesn't have to be proven. Thank you. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Reinhardt, Pollak